George **ALLEN and Dale Jacobsen, on their own behalf and on behalf of all other persons similarly situated, Plaintiffs-Appellants,**

v.

**BOARD OF PARDONS; Henry E. Burgess, Chairman, Defendants-Appellees.**

No. 85–3600.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1985.

Decided June 26, 1986.

Stephen L. Pevar, Denver, Colo., for plaintiffs-appellants.

Clay R. Smith, Asst. Atty. Gen., Helena, Mont., for defendants-appellees.

Before SNEED, SCHROEDER, and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge.

The appellants seek to maintain a class action under 42 U.S.C. § 1983 on behalf of "all present and future inmates of the Montana State Prison who are now or may become eligible for parole." They seek to show that the Montana Board of Pardons is failing to use proper standards for determining parole eligibility and thereby denying prisoners due process of law as guaranteed by the fourteenth amendment of the Constitution.

Appellants' suit is one of many which followed in the wake of the Supreme Court's decision in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). The Supreme Court there held that a state prison inmate does not have a federally guaranteed right to parole. *Id.* It also held that a state, through its own enactments, can create an "expectancy of release," which is a liberty interest entitling inmates to some due process protections before parole is denied. 442 U.S. at 12; *see also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that state statute granting good-time credits to inmates created a liberty interest protected by due process guarantees).

The district court dismissed appellants' action. It concluded that the Montana statute did not create a liberty interest because it made the granting of parole too dependent upon the exercise of Parole Board discretion. The district court in this case followed *Campbell v. Montana State Board of Pardons,* 470 F.Supp. 1301 (D.Mont. 1979), a one-paragraph opinion stating that the Montana statute did not create a liberty interest in parole.

The only issue before us is whether the Montana statute creates a protected liberty interest. This is a question of law which we must determine under the standards of *Greenholtz,* as illuminated by the decisions of other federal courts in cases spawned by *Greenholtz.* It is a question which must be decided by examining the particular provisions of the state enactment in question, pursuant to *Greenholtz*'s admonition to proceed on a case-by-case basis. *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106. We hold that the Montana statute does create such a liberty interest and therefore we reverse the district court.

In *Greenholtz,* the Nebraska statute which the Court held conferred a due process entitlement provided:

Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:

(a) There is a substantial risk that he will not conform to the conditions of parole;

(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

(c) His release would have a substantially adverse effect on institutional discipline; or

(d) His continued correctional treatment ... in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

Neb.Rev.Stat. § 83–1,114(1) (1976).

The Supreme Court in *Greenholtz* focused upon the structure of that statute. By using the word "shall," it mandates parole unless the Board determines that one or more enumerated reasons exist which would make parole unwise in the given case. The Court recognized that the statute vests very broad discretion in the Board and "is necessarily subjective in part and predictive in part." 442 U.S. at 13, 99 S.Ct. at 2107.

The Montana statute is similar in structure to the Nebraska statute in *Greenholtz*. The Montana statute provides:

(1) Subject to the following restrictions, the board shall release on parole ... any person confined in the Montana state prison ... when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community:

(a) No convict ... may be paroled until he has served at least one-half of his full term, ... except that a convict designated as a nondangerous offender ... may be paroled after he has served one-quarter of his full term.... Any offender serving a time sentence may be paroled after he has served ... 17½ years.

(b) No convict serving a life sentence may be paroled until he has served 30 years....

(2) A parole shall be ordered only for the best interest of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.

Mont.Code Ann. § 46–23–201.

The Montana statute, like the Nebraska statute in *Greenholtz*, uses mandatory language. It states that the Board "shall" release a prisoner on parole when it determines release would not be harmful, unless specified conditions exist which would preclude parole. There is no doubt that it, like the Nebraska provision in *Greenholtz*, vests great discretion in the Board. Under both statutes the Board must make difficult and highly subjective decisions about risks of releasing inmates. However, the Board may not deny parole under either statute once it determines that harm is not probable.

The only post-*Greenholtz* case in which this court has considered a parole statute is *Bowles v. Tennant*, 613 F.2d 776 (9th Cir. 1980). There we examined the federal parole statute, 18 U.S.C. § 4206(a). We noted there that the federal statute, like the Nebraska statute in *Greenholtz*, has mandatory language which we termed "[a]n important factor" in deciding whether a statute creates an expectation of parole sufficient to create a protected liberty interest. *Bowles*, 613 F.2d at 778. We also observed that the federal statute contains a qualifying provision allowing the Commission to deny parole for "good cause," regardless of the guidelines set forth elsewhere in the statute. Because of that proviso, we concluded that the federal statute provides an expectation of parole "no greater than that provided by the Nebraska statute." *Id.* We did not decide whether or not it created a liberty interest, because we concluded that the Parole Commission in that case

had provided all of the due process required in *Greenholtz.*

The Montana statute contains the key mandatory language discussed in *Greenholtz.* It does not contain a proviso like that in the federal statute removing limitations on the reasons for denying parole. Following our analysis in *Bowles,* we conclude that the Montana statute creates an expectation of parole greater than that created by the federal statute.

In *Baumann v. Arizona Department of Corrections,* 754 F.2d 841, 843–45 (9th Cir. 1985), we considered the Arizona work furlough program. The program was administered under regulations which did not contain any criteria limiting the discretion of officials and thus did not mandate the Department of Corrections to provide work furlough when criteria were met. We held that a mandatory formulation was crucial to creation of a constitutionally protected liberty interest, and held that none had been created in that case. Because the Montana statute has a mandatory requirement for parole release when its criteria are satisfied, *Baumann* does not support the position of the Montana Board in this case.

An examination of decisions in other circuits shows a fairly clear decisional pattern in post-*Greenholtz* decisions considering various state parole statutes. Those state enactments which courts have held do not create a liberty interest do not have mandatory language that parole "shall" be granted when given criteria are met. *See, e.g., Peck v. Battey,* 721 F.2d 1157 (8th Cir.1983) (South Dakota statute establishes no criteria for assessing parole eligibility); *Williams v. Briscoe,* 641 F.2d 274 (5th Cir.), *cert. denied,* 454 U.S. 854, 102 S.Ct. 299, 70 L.Ed.2d 147 (1981) (Texas statute provided that parole panel *may* recommend parole);

*Wagner v. Gilligan,* 609 F.2d 866 (6th Cir. 1979) (Ohio Board *may* grant parole if it believes it would further the interests of justice and be consistent with society's welfare); *Shirley v. Chestnut,* 603 F.2d 805 (10th Cir.1979) (Oklahoma statute establishes no criteria for assessing parole eligibility).

On the other hand, those state enactments which circuits have held do create a liberty interest generally have contained either a mandatory provision that parole shall be granted when criteria are met, or have expressly created a presumption of eligibility unless certain negative criteria are found. *See Mayes v. Trammell,* 751 F.2d 175 (6th Cir.1984) (Tennessee parole rules create presumption of eligibility, subject to finding of listed adverse factors); *Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982). In *Williams* the Eighth Circuit held that the Missouri parole statute then in effect created a protected liberty interest by providing that "[w]hen in [the Board's] opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the Board shall release on parole any person confined...." Mo.Rev. Stat. § 549.261.[1]

The key language of that Missouri statute is virtually identical to the Montana parole statute before us. Given the similarities between the Montana statute and the Missouri statute considered in *Williams,* any decision other than the one we reach would squarely conflict with the Eighth Circuit's decision in *Williams.*

The Seventh Circuit has found a liberty interest in an Illinois statute that appears to grant even more discretion to its parole board than does either the Montana or the

---

**1.** Missouri amended its parole statute after the Eighth Circuit's decision in *Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697 (8th Cir.1981). The current statute, Mo.Rev.Stat. § 217.690 (Supp.1982), provides:

When in its opinion there is a reasonable probability that an inmate ... can be released without detriment to the community or to

himself, the board *may in its discretion* release or parole such person. (emphasis added).

The Eighth Circuit has held that the new statute is materially different from the previous one, and does not create a protected liberty interest in parole. *Gale v. Moore,* 763 F.2d 341, 343 (8th Cir.1985).

Missouri statute. *Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185 (7th Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). The Illinois statute provided that the Board "shall not" parole a person if it determines that he would not conform to conditions of parole or his release would deprecate the seriousness of his offense or would have an adverse affect on institutional discipline. Ill. Rev.Stat. Ch. 38, § 1003-3-5(c).

There is at least one decision which has gone even farther. In *Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980) (en banc), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), the Third Circuit analyzed a work release program which contained no mandatory language or presumptions of release. It held that a liberty interest under the program arises when a prisoner satisfies eligibility requirements and when the exercise of prison officials' discretion "is consistent with work release policy." *Id.* at 1007. Justice White's opinion dissenting from denial of certiorari notes a conflict between it and other circuits' decisions. 449 U.S. at 1095, 101 S.Ct. at 892.

Our opinion in *Baumann* rejected the Third Circuit's approach in *Winsett,* 754 F.2d at 844-45, and we do not follow it here. We follow instead the guidelines which have developed from *Greenholtz* and the decisions of our own and other circuits in holding that the statute in question here does create a liberty interest in parole. Any discussion of the nature of the process which is due the appellants or whether Montana's present procedures accord that due process is premature. We hold only that the appellants state a claim upon which relief can be granted.[2]

Reversed and remanded for further proceedings.

---

2. Both named plaintiffs were released on parole after this suit was filed. However, because the complaint seeks compensatory damages in addition to declaratory and injunctive relief, the appeal is not moot. *See* 6A J. Moore, *Moore's*

*Federal Practice* ¶ 57.13, at 57-116 (2d ed. 1985) (claim for money damages not moot even if claims for declaratory and injunctive relief based on same injury are moot).