925 F.2d 1470
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Richard Alex MILES, Petitioner-Appellant,
v.
Richard H. RISON, Respondent-Appellee.
 No. 89-55584.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 8, 1991.*
Decided Feb. 19, 1991.
 Before JAMES R. BROWNING, D.W. NELSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner Richard Alex Miles was sentenced on November 30, 1976 by the United States District Court for the Eastern District of California to a forty-year term of imprisonment based on his guilty plea to charges of armed bank robbery and kidnapping. His initial parole eligibility date was set for 100-148 months after his prison sentence began.
 
 
 3
 On January 11, 1984, inmate Joseph Urenda was stabbed by two fellow inmates at the U.S. Penitentiary at Lompoc, California, sustaining severe injuries. The prison's Institution Discipline Committee (IDC) conducted an investigation and found that petitioner had been one of the two assailants. Miles complains that the two witnesses he requested to appear were not produced, Urenda, the victim, and Mark Gest, the other person who was accused of the stabbing. Miles testified before the IDC and disputed the evidence presented against him. The IDC found Miles guilty of assault, ordered that he forfeit his "good time" earned, and placed him in disciplinary segregation for 60 days. Miles does not dispute the procedure the IDC used to find him guilty of assault.
 
 
 4
 On September 2, 1987, petitioner had his initial parole hearing at the U.S.P. Lompoc. The Parole examination panel ("the Commission") considered a variety of information, including the attack on inmate Urenda. Based upon the information contained in the IDC report, the panel found that petitioner participated in the attempted murder of Urenda, an offense carrying a category eight level of severity under the parole guidelines. Based on the parole guidelines under 28 C.F.R. Sec. 2.20, the Commission added 120 months, ten years, to Miles' parole eligibility dates.
 
 
 5
 Petitioner appealed the Commission's decision to the National Appeals Board asserting that the Commission erred in categorizing his offense as attempted murder when the IDC had found him guilty of assault. He also contended that the Commission's procedures deprived him of due process of law. The National Appeals Board affirmed the Commission's decision by notice of action dated January 21, 1988.
 
 
 6
 Appellant then filed a habeas corpus petition. The District Court concurred in the magistrate's finding that the Commission properly considered the IDC information and that the court therefore lacked jurisdiction to review the Commission's decision.
 
 Standard of Review
 
 7
 This court reviews the district court's denial of a habeas corpus petition de novo. Walker v. United States, 816 F.2d 1313, 1316 (9th Cir.1987). However, our review of the propriety of parole decisions is much more limited. A parole Commission's substantive decision to grant or not grant parole is reviewable only if the Commission exceeds the statutory guidelines or its actions violate the Constitution. Wallace v. Christensen, 802 F.2d 1539, 1551-52 (9th Cir.1986) (en banc).
 
 Discussion
 
 8
 Did the Parole Commission's Decision Usurp Judicial Powers?
 
 
 9
 Miles' parole hearing was held in September 1987 pursuant to 18 U.S.C. Sec. 4201-18. Miles remained subject to that law despite its repeal in 1984 because the law remained applicable for five years to individuals who committed offenses prior to November 1, 1987. Pub.L. 98-473, Title II, Sec. 218(a)(5), October 12, 1984, 98 Stat. 2027.
 
 
 10
 Miles argues that the Parole Commission's finding that he engaged in criminal conduct and its addition of 10 years to his parole eligibility date was an unconstitutional infringement on judicial functions. He contends that the judiciary possesses the exclusive power to adjudicate an individual's guilt and impose sentence.
 
 
 11
 The Commission does not impose sentence in denying parole, it merely extends the parole eligibility date. The Commission "may not require a prisoner to spend a single day in prison longer than his judicial sentence dictates...." Geraghty v. United States Parole Commission, 719 F.2d 1199, 1212 (3rd Cir.1983), cert. denied, 465 U.S. 1103 (1984). The sanction imposed on Miles did not result in a longer prison term but only a delayed parole eligibility date. Thus, no usurpation of judicial function occurred. See id. at 1211-1212.
 
 
 12
 Disciplinary infractions or new criminal behavior committed by a prisoner after he commences his sentence and before his release on parole may be sanctioned under the guidelines published in 28 C.F.R. Sec. 2.36. The time specified in those guidelines shall be added to the original presumptive or effective parole date. 28 C.F.R. Sec. 2.36.
 
 
 13
 The Commission may grant parole if an eligible prisoner has substantially observed the rules of his penal institution and if the Commission determines that his release would not depreciate the seriousness of the offense or jeopardize the public welfare. 18 U.S.C. Sec. 4206(a). The Commission is authorized to take into account "any substantial information available to it ... and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond." 28 C.F.R. Sec. 2.19(c); Walker, 816 F.2d at 1317 (proper to consider unadjudicated allegations in pre-sentence report in determining guideline range); Blue v. Lacy, 857 F.2d 479, 481 (8th Cir.1988) (Commission permissibly added 18-24 months based upon disputed allegations of post-escape criminal conduct in setting presumptive parole date for escape).
 
 
 14
 Miles was apprised of the fact that the IDC information would be evaluated and was given an opportunity to respond. At the IDC hearing he was able to dispute the evidence presented against him and to pursue an administrative appeal of its findings. Accordingly, the Commission could properly take into account the findings of the IDC investigation. Walker, 816 F.2d at 1317.
 
 
 15
 Miles also complains that the Commission classified his offense as "attempted murder," a category eight offense, when the IDC had only found him guilty of "assault," a category seven offense. A charge of murder adds at least 120 months to a presumptive parole date. 28 C.F.R. Sec. 2.20, Ch. 2, Sub. Ch. (B)(201). Criminal attempt is graded in the same category as the underlying offense. Id. at (102). The federal regulations state that "[i]f an offense behavior can be classified under more than one category, the most serious applicable category is to be used." Id. at Ch. 13, Sub. Ch. (A)(1). A finding of attempted murder requires that the offender intended to kill or do serious bodily harm to the victim without just cause of provocation. Id. at Sub. Ch. (B)(10). "Serious bodily harm" refers to injury creating a substantial risk of death, major disability or loss of a bodily function, or disfigurement. Id. at (16). Where all elements are established for both offenses, the rule which requires choosing the higher offense category indicates that the Commission did not err in categorizing Miles' stabbing of Urenda as attempted murder instead of assault.
 
 
 16
 The Ninth Circuit was confronted with a similar situation in Wallace, where the prisoner, who demanded $400,000 after he placed a bomb in baggage bound for an American Airlines flight, was convicted of extortion, using an explosive to commit a felony and possession of an unregistered destructive device. The Parole Commission classified Wallace's offense as "Interference with a Flight Crew," an offense carrying more serious sanction for parole eligibility than any of the offenses for which he was convicted. The court concluded that the Commission did not exceed the parole guidelines in so classifying his offense. Wallace, 802 F.2d at 1553. "The Commission found that Wallace's offense had the potential to cause injury or death and destruction to an aircraft and passengers. The Commission's determination ... involved a judgment among a range of possible choices and options relating to the severity of Wallace's offense." Id. Similarly, in Miles' case, the parole Commission could have concluded that Miles' assault, which resulted in serious injuries to Urenda, could have led to Urenda's death or to serious bodily harm and thus was an attempted murder. This decision does not exceed the statutory limits imposed by the federal regulations on sentencing, nor does it result in a longer sentence in violation of the constitution.
 
 
 17
 Did Petitioner's Hearing before the Parole Commission afford
 
 
 18
 him Adequate Due Process?
 
 
 19
 Petitioner contends that due process required that the Commission afford him a "de novo " evidentiary hearing with the right to representation by counsel and to cross-examine witnesses. The record reveals that appellant received all the process he was due.
 
 
 20
 The Due Process Clause applies only when government action deprives an individual of a liberty or property interest to which she has a "legitimate claim of entitlement." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). A state statutory provision establishing the mere possibility of parole does not create a liberty interest entitled to the protection of due process. Id. at 9-11. The Greenholtz Court found that the opportunity to respond at the initial parole interview provided adequate procedural safeguards against serious risks of error and satisfied the due process requirements for a parole hearing. Id. at 15.
 
 
 21
 Greenholtz did not decide what due process was required in connection with the federal parole process. This court has held that "the federal parole statute creates, at most, a liberty interest entitled to no more protection of due process than Greenholtz applied to Nebraska parole procedures". Roberts v. Corrothers, 812 F.2d 1173, 1179 (9th Cir.1987). Where, as here, petitioner was properly advised of the initial hearing and of the information to be considered, and accorded an opportunity to challenge that information at the hearing and through his subsequent appeal, the requirements of due process were fully satisfied.
 
 
 22
 Miles also contends that he was entitled to more procedural protections because the Commission's procedures were the equivalent of a parole rescission hearing. Inmates who have been granted parole and face rescission of their parole dates have a protectable liberty interest which entitles them to an evidentiary hearing with the right to counsel and to confront witnesses before their early release date can be rescinded. Green v. McCall, 822 F.2d 284, 289 (2nd Cir.1987). Prisoners with only a presumptive parole date are not entitled to the same due process protections applied to parole grantees. Id. at 293. Miles had not even received a presumptive parole date and was not entitled to any greater procedural protections.
 
 
 23
 Petitioner's attempts to characterize the Commission's hearings as a parole revocation rest on a similar fallacy. At the time of his initial hearing, he possessed only a hope of, not an entitlement to, early release. No more procedural protections were required than those applied in Greenholtz, 442 U.S. at 15, and Roberts, 812 F.2d at 1178. The procedures observed were adequate and did not deprive Miles of his constitutional right to due process.
 
 
 24
 Must the Commission Apprise Prisoners of the Manner in which
 
 
 25
 Evidence Will be Considered?
 
 
 26
 Petitioner contends that his pre-hearing notice was inadequate because he was not apprised that the IDC finding of assault would be considered "new criminal conduct" in setting his presumptive parole date. He does not dispute that he was apprised both of the hearing itself, and of the information that the Commission would consider.
 
 
 27
 Miles was entitled to notice of what information would be considered, but no advance notice is required of the manner in which such information will be considered. See Bowles v. Tennant, 613 F.2d 776, 778-79 (9th Cir.1980) (petitioner was not entitled to pre-hearing notice that circumstances of related offenses would be considered specifically in rating the severity of the instant offense). It is sufficient that the prisoner was advised of the basis for the Commission's decision in time to allow a challenge to be raised through administrative appeal. Id. at 779; Reynolds v. McCall, 701 F.2d 810, 812-13 (9th Cir.1983).
 
 
 28
 Petitioner was informed before the hearing of what information would be considered, and was informed afterwards of the reasons for the Commission's decisions. No deprivation of notice occurred in Miles' case.
 
 
 29
 The district court's denial of Miles' habeas corpus petition is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3